Kolin C. Tang (SBN 279834)
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
11755 Wilshire Blvd.
15th Floor
Los Angeles, CA 90025
Phone: (323) 510-4060
Fax: (866) 300-7367
ktang@sfmslaw.com

[Additional Counsel for Plaintiff
Listed on Signature Page]

*Counsel for Plaintiff, on behalf of himself
and all others similarly situated*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL BERMAN, on behalf of himself and all others similarly situated, | Civil Case No. 2:18-cv-2818 |
| Plaintiff, | CLASS ACTION |
| v. | |
| BATTEN INDUSTRIES, INC., BATTEN INDUSTRIES (US) INC. and BATTEN SERVICES (US) INC., | JURY TRIAL DEMANDED |
| Defendants. | |

### CLASS ACTION COMPLAINT

Plaintiff, Daniel Berman ("Plaintiff"), a citizen of California, individually

and on behalf of all similarly situated individuals, by and through his undersigned

counsel, alleges, on personal knowledge as to all facts related to himself and upon

information and belief (based on the investigation of counsel) as to all other

matters, as follows:

## NATURE OF ACTION

1.      This is a proposed Class Action Complaint against Defendants, Batten Industries Inc., a Canadian corporation; Batten Industries (US) Inc., a Washington corporation, and Batten Services (US) Inc., a Washington corporation (collectively, "Batten" or "Defendant"), for falsely, misleadingly and deceptively labeling its kitchen and bathroom cleaning and laundry products as "All Natural" when these products, in fact, are not all natural and contain synthetic and toxic ingredients.

2.      In recent years, consumers have become significantly more aware and sensitive to the toxicity and impact of household products on their health, the health of their children, and the general environment.  As a result, demand has increased for so-called "green" products that are naturally derived, environmentally sound, non-toxic, and non-injurious to consumers and their health.

3.      Importantly, consumers seek both healthier and ethically superior performance in preferring natural products, and consumers are willing to pay a premium for such products.  Batten knows this.

4.      Responsive to trending consumer preferences for natural products, Defendant maintains an enterprise ostensibly built around providing consumers with purportedly "All Natural Nellie's" products for the kitchen, laundry and bathroom (hereinafter, "Product" or "Products") that are safe, clean, eco-friendly, cruelty-free, organic, and that do not cause any health issues.  Batten, a Canadian corporation, boldly, and falsely, proclaims that it offers "All Natural" products while United States manufacturers dare not do so.

5.      Defendant's public image has been carefully cultivated to the extent that even its website address contains the words "all natural," to wit: www.nelliesallnatural.com.[1]  This pattern continues on search engines, blogs and

---

[1] As discussed more fully below, following Plaintiff sending Defendants notice of their violations in accordance with Cal. Civ. Code § 1782, Defendants changed their website to www.nelliesclean.com.

CLASS ACTION COMPLAINT

all manner of social media:

Amazon.com: Nellie's All Natural Laundry Soda, 3.3 lbs. (1): Health ...
https://www.amazon.com/Nellies-Natural-Laundry-Soda-lbs/dp/B00M39VE0G ▾
★★★★✰ Rating: 4.6 - 1,307 reviews
Buy **Nellie's All Natural** Laundry Soda, 3.3 lbs. (1) on Amazon.com ✓ FREE SHIPPING on qualified orders.

6.     Defendant purports to provide its customers with "all natural" products, prominently displaying the term "All-Natural" front and center on the face of its product packaging:



7.     Batten misleadingly labels such products as "All-Natural," despite the fact that all of its Products contain non-natural ingredients.  The Products include, but are not limited to:

- Nellie's All-Natural Laundry Soda
- Nellie's All-Natural Automatic Dish Nuggets
- Nellie's All-Natural All-Purpose Cleaner
- Nellie's All-Natural Shower & Bath Cleaner
- Nellie's All-Natural Toilet Bowl Cleaner
- Nellie's All-Natural Automatic Dish Powder

CLASS ACTION COMPLAINT

- Nellie's All-Natural Laundry Nuggets
- Nellie's All-Natural Oxygen Brightener
- Nellie's All-Natural Wow Stick
- Nellie's All-Natural Baby Laundry
- Nellie's All-Natural One Soap

8.     For example, the "All-Natural Baby Laundry" formula contains Lauryl Alcohol Ethoxylate, which substance is the result of a direct reaction of higher alcohols, acids or amines with ethylene oxide in the presence of an alkaline catalyst at a temperature of 120–180 °C (250–360 °F).  Such chemistry is precisely what consumers seek to avoid in purchasing "all natural."  The Natural Products Association's ("NPA") Standard and Certification for Personal Care Products forbids Ethoxylated ingredients from being called "natural."[2]

9.     Another ingredient used in the All-Natural Baby Laundry is Laureth-7, a polyethylene glycol-based surfactant that may contain toxic impurities such as 1,4-dioxane, a carcinogen.

10.     Another ingredient used extensively in the Products is Cocamidopropyl Betaine ("CAPB"), produced by coconut oil fatty acids with 3,3-dimethylaminopropylamine, which forms cocamidopropy dimethlamine.  The cocamidopropyl dimethlamine is then reacted with sodium monochloroacetate which produces CAPB. The NPA prohibits products containing CAPB from being certified as "natural." *Id.*

11.     All of the Products identified in ¶ 7, *supra,* contain one or more of the

---

[2] https://www.npainfo.org/App_Themes/NPA/docs/The%20Natural%20Standard%20010214.pdf.

CLASS ACTION COMPLAINT

following synthetic ingredients: Alkyl Polyglycoside, Cocoamidopropyl Amine Oxide, Cocoamidopropyl Betaine Laureth-7, Lauryl Alcohol Ethoxylate 7 Mole, Linear Alcohol Ethoxylate, Sodium Percarbonate, Sodium Metasilicate, Sodium Metasilicate, Pentahydrate Sodium Silicate.

12.     Defendant know that its Products are not all natural, but nonetheless advertise and market them in a manner intended to mislead and deceive consumers. As a result, Defendant is able to unjustly profit at consumers' expense.

13.     Plaintiff brings this action individually, and on behalf of the proposed Classes as more fully defined below.  This action concerns certain unfair and deceptive consumer sales practices of Defendants attendant to their offline and online advertising and sale, in the United States, of its Products.  Specifically, Batten has breached its express "All-Natural" warranty and is in violation of the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq*. ("CLRA"), the Unfair Competition Law, California Business and Professions Code § 17200, *et seq*. ("UCL"), and the False Advertising Law, California Business and Professions Code § 17500, *et seq*. ("FAL").

14.     Through this action Plaintiff seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Classes as a result of Defendant's unlawful conduct.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  The amount in controversy, upon information and belief, exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the class members and Defendants are citizens of different states as required by 28 U.S.C. § 1332(d)(2).

16.     This Court has personal jurisdiction over Defendant because it is authorized to do business, and currently does business, in this State.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

18.     Plaintiff is and was a resident of Los Angeles, California, at all times relevant to this action.  Plaintiff, thus, is a citizen of California.

19.     Defendant, Batten Industries Inc., is a Canadian corporation with its principal place of business at 114 2455 Dollarton Hwy North Vancouver BC, Canada, V7h0a2.

20.     Defendants, Batten Industries (US) Inc. and Batten Services (US) Inc., are Washington corporations, affiliates of and directly controlled by Batten Industries, Inc. (Canada) their parent company, with an address of 925 Boblett Strett,

CLASS ACTION COMPLAINT

Blaine, WA. 98230.

21.    With over 15 popular brands, of which Nellie's is one, Batten's products are available for sale in many retail locations worldwide, including extensive retail exposure in California.  In the Los Angeles area, for example, Nellie's brand products are sold in about 20 retail outlets.  Additionally, Batten has its own proprietary website and e-commerce retail storefronts on Amazon, eBay, Walmart, Target, and many other popular ecommerce platforms.

22.    Batten purposefully avails itself of the California/U.S. consumer market, and directly or indirectly distributes the Products to hundreds and thousands of locations within this District, State and nation every day.

**ADDITIONAL FACTUAL ALLEGATIONS**

**PLAINTIFF'S EXPERIENCE**

23.    Plaintiff's claims are based on the Products' labels.  On or about December 19, 2017, while shopping on-line at www.target.com for laundry detergent, Plaintiff viewed the claims regarding Nellie's All-Natural Laundry Soda ("Laundry Soda").  In particular, Plaintiff recalls reading Defendants' claims marketed and advertised on the label of the Laundry Soda that it was "All-Natural."

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20      24.    After reviewing the claims on the website and the depicted label,

Plaintiff purchased Defendant's Laundry Soda, relying on its representations that the

Laundry Soda was "All-Natural."

      25.    Plaintiff did not and could not reasonably have known that the Laundry

Soda he purchased was highly toxic because Defendant represents it to be all-natural

and Plaintiff reasonably relied on Defendant's representations.

CLASS ACTION COMPLAINT

26.     Following delivery of the Laundry Soda, Plaintiff laundered one load of clothing.  Plaintiff examined the container at that point and, to his dismay, found that the Laundry Soda contains the following:

**INGREDIENTS:** Soda ash, linear alcohol ethoxylate, sodium chloride, sodium metasilicate, sodium carbonate.

27.     Of the five ingredients listed, three are synthetic chemicals:

•       Alcohol Ethoxylate ("AE"):  this ingredient carries risks that "all natural" products do not carry.[3] One byproduct of ethoxylation is 1,4-dioxane, a possible human carcinogen. Undiluted AEs can cause dermal or eye irritation. In aqueous solution, the level of irritation is dependent on the concentration. AEs are considered to have low to moderate toxicity for acute oral exposure, low acute dermal toxicity, and have mild irritation potential for skin and eyes at concentrations found in consumer products.

•       Sodium Metasilicate: this ingredient contains alkaline materials and poses hazards to the skin and eyes. The physiological effects of contact range from causing irritation to causing chemical burns.[4]

•       Sodium Carbonate: the vast majority of sodium carbonate is manufactured through chemical processes.

28.     As a result, Plaintiff did not receive the benefit of the bargain and, in fact, paid a premium for the purportedly "All-Natural" Product, as alleged elsewhere

---

[3] https://en.wikipedia.org/wiki/Ethoxylation#Human_health.

[4] Sodium metasilicate is toxic by definition under federal law, based on animal testing demonstrating that the substance is lethal even in very small doses. It causes serious eye damage that remains irreversible 21 days after exposure. It is highly corrosive to the skin, causing irreversible damage after short exposure; in animal tests, the substance caused visible necrosis after less than one hour of exposure. It is acutely toxic if ingested, even in minute amounts. Human ingestion of 1 mL/kg causes changes in tubules (including acute renal failure and necrosis), hematuria, and nausea or vomiting.

CLASS ACTION COMPLAINT

in this Complaint.

29.   The United States household cleaner/laundry products industry has annual revenues in the range of $20 billion.  Approximately 3% of that total, or $600 million, is for "green" products.  Green products are significantly more expensive than regular products and, for that reason, in part, the green segment of the house cleaner market remains a small niche.[5]

30.   Defendant has tapped into this multi-billion dollar industry, misleadingly marketing its Products as "All-Natural" and deceiving consumers into purchasing Products that they believe are all natural, which, in fact, contain synthetic ingredients.

31.   Given the strong demand for "all natural" products, it is not surprising that Defendant utilizes packaging (and its own website) stating, prominently, "All-Natural."

32.   Seeking to profit on consumers' desire to locate and use all natural, environmentally sound, non-abrasive, and non-injurious detergent and house cleaner alternatives to standard offerings, Defendant markets the Products as "All-Natural" and free from harmful chemicals, providing environmental and safety benefits that traditional detergents do not.

33.   The differential between the cost of Batten's allegedly "All-Natural,"

---

[5] https://blog.marketresearch.com/3-reasons-green-household-product-sales-are-dropping.

CLASS ACTION COMPLAINT

*i.e.* purportedly superior Products, and other regular cleaning products equally effective to Batten's Products, equals the all-natural premium overcharge to, *i.e.* damage suffered by the Classes.

34.    Using laundry detergents as an example, Nellie's Laundry Soda costs about $.21 per load, while equally or more efficacious detergents (as rated by Consumer Reports) cost less per load:[6]

- TideHE Plus Bleach Alternative: Price: $0.19 (score of 74) — Only for HE washers.
- PersilProClean Power-Liquid: Price: $0.20 (score of 74) — Good for all washers.
- Green WorksLaundry Detergent: Price: $0.12 (score of 72) — Good for all washers.
- WiskDeep Clean: Price: $0.14 (score of 72) — Good for all washers.

35.    The Federal Trade Commission has made clear that it is false and deceptive to advertise or package a product as "all " if it contains any synthetic ingredients, stating "[i]f companies market their products as 'all natural' or '100% natural,' consumers have a right to take them at their word."[7]

36.    As discussed in ¶ 7, each of the Products contains non-natural, synthetic ingredients, including: Alkyl Polyglycoside, Cocoamidopropyl Amine Oxide, Cocoamidopropyl Betaine Laureth-7, Lauryl Alcohol Ethoxylate 7 Mole, Linear Alcohol Ethoxylate, Sodium Percarbonate, Sodium Metasilicate, Sodium

---

[6]http://clark.com/shopping-retail/best-laundry-detergent-your-money/.

[7]https://www.ftc.gov/news-events/blogs/business-blog/2016/04/are-your-all-natural-claims-all-accurate.

Metasilicate Pentahydrate Sodium Silicate. Such ingredients cannot be characterized as "natural," and, thus, Defendant's representations about the Products' natural quality are false and misleading.

37.   The Laundry Soda that Plaintiff purchased, which Defendant represented to be "All-Natural" at the time of Plaintiff's purchase, contains AE. This ingredient carries risks that "all natural" products do not carry.[8] One byproduct of ethoxylation is 1,4-dioxane, a possible human carcinogen. Undiluted AE's can cause dermal or eye irritation. In aqueous solution, the level of irritation is dependent on the concentration. AE's are considered to have low to moderate toxicity for acute oral exposure, low acute dermal toxicity, and have mild irritation potential for skin and eyes at concentrations found in consumer products.

38.   A reasonable consumer purchasing a product identified as "All-Natural" would not expect the product to contain synthetic ingredients subject to contamination by 1,4-dioxane. Indeed, Plaintiff purchased the Product expecting it to contain only natural ingredients and has been damaged insofar as the Products did not contain only natural ingredients.

39.   Many of the ingredients contained in the Products are the result of complex, multi-step processes that involve the use of toxic chemicals. The end products are substances which do not exist in nature, and which could not exist

---

[8] https://en.wikipedia.org/wiki/Ethoxylation#Human_health.

CLASS ACTION COMPLAINT

without the complex chemical processes.   Defendant's characterization of the products as "All-Natural" is, thus, deceptive and false.

40.   Consumers are frequently disappointed with the Laundry Soda, the Product Plaintiff purchased, both due to irritation and cleaning performance, reviewing the Laundry Soda as follows:[9]

- It does not do what it says it will. Received a chemical burn from wearing clothes washed in this.
- Causes rashes when used on cloth diapers. Does not clean at all!
- I know we want an eco friendly, chemical free detergent for our laundry but we also want something that actually works in removing at least the smell on our clothes and simple stains they derive from food.
- This crap stains your clothes badly, ruined a huge batch of work clothes, totally screwed me over, do NOT BUY. I got some all natural laundry powder from cal bens pure soap co. That actually worked.
- I wish I would not have spent a hard earned 20.00 on this. It says All-Natural on the box, but look at the ingredients and they are: all natural laundry soda (i assume they mean sodium carbonate), sodium silicate and COCONUT OIL BASED DETERGENT. I have found that when the words "based detergent" are used it is a synthetic chemical of some sort.
- I used Nellie's for over a year, until I found out they were using SLES (Sodium Lauryl Ether Sulphate[sic]) in their products. I noticed SLES on the label of one of their dish detergent soaps, and that particular retailer called the company to ask them. They said that there are only trace amounts, but they don't stipulate this on their label. Next time you look at the packaging, notice that they do not list their ingredients. This is very sneaky. I stopped using this product, because they are trying to deceive the consumer into thinking it's "Eco-friendly" when in actual fact, it's not. I would recommend Charlie's Soap instead.

---

[9]https://www.amazon.com/Nellies-NLS-50-Natural-Laundry-Soda/product-reviews/B001BYBHHE/ref=cm_cr_getr_d_paging_btm_1?ie=UTF8&reviewerType=all_reviews&filterByStar=one_star&pageNumber=1&sortBy=recent.

CLASS ACTION COMPLAINT

Many consumers trade-off cleaner clothes for what they believe to be a safer, ethically superior wash, they have been fooled on both fronts by Batten.[10]

41.    Plaintiff suffered actual damages and loss, in the amount of the total price of the Laundry Soda purchased and/or the price premium of the Product, as a result of improper actions described herein.

42.    Defendant's false, misleading, and deceptive misrepresentations and omissions, as described herein, are likely to continue to deceive and mislead reasonable consumers and the general public.

43.    In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for the Products over comparable products that did not claim on their labels that they are "All-Natural."

## BATTEN'S CONDUCT VIOLATES CALIFORNIA LAWS PROTECTING CONSUMERS

44.    "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its Label and various tangible and intangible qualities they may come to associate with a particular source.  An entire body of law, trademark

---

[10] According to Giovanni Ciserani, Proctor & Gamble's group president of global fabric and home care: "[w]henever you force them into a trade-off, you get a limited result."
https://www.theguardian.com/sustainable-business/proctor-gamble-remove-phosphates-laundry-soap

CLASS ACTION COMPLAINT

law, exists to protect commercial and consumer interests in accurate label representations as to source, because consumers rely on the accuracy of those representations in making their buying decisions." *Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 328 (Cal. 2011) (internal citations omitted).

45.    Through its conduct alleged above, Defendant has violated the UCL, FAL and CLRA, which were enacted to protect California consumers.  Defendant's conduct violates the UCL, which prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ..." Cal. Bus. & Prof. Code § 17200.  An act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent. *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal. App. 4th 1544, 1554 (2007).  "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision or demurrer," such that granting a motion to dismiss is appropriate only in "the rare situation." *Williams v. Gerber Products Co.,* 552 F.3d 934, 938-39 (9th Cir. 2008).  The purpose of the UCL is to protect consumers by promoting fair competition in the markets for goods and services, and its provisions are intended to be broad.  By proscribing "any unlawful" business act or practice, the UCL "borrows" rules set out in other laws and makes violations of those rules independently actionable.  However, a practice may violate the UCL even if it is not prohibited by another statute.  Unfair and fraudulent practices are alternate grounds for relief and mis-description of specific characteristics of a product are actionable as well.  Plaintiff alleges specifically the

words "All-Natural" are false and misleading because some of the ingredients in the Products are synthetic and not natural. Defendant's conduct violates the FAL, and, in addition, false advertising is included in the "fraudulent" category of prohibited practices. *In re Tobacco II* Cases, 46 Cal.4th 298, 311–312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009). Section 17500 provides, in part: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property ... to make or disseminate or cause to be made or disseminated before the public in this state ... in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property ... or performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...." Section 17500 was intended to be comprehensive and has been broadly construed to proscribe "'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike, Inc*., 27 Cal.4th 939, 951, 119 Cal.Rptr.2d 296, 45 P.3d 243(2002). It is plausible that a reasonable consumer would rely on the misrepresentation and be misled into believing that the Products are all natural and they are paying a premium for those representations.

CLASS ACTION COMPLAINT

46.     Defendant's conduct violates the CLRA, which proscribes certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Civ. Code, § 1770 (a)(4). The standards for determining whether a representation is misleading under the FAL apply equally to claims under the CLRA. *See Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1360, 8 Cal.Rptr.3d 22 (2003). Conduct that is "likely to mislead a reasonable consumer" thus violates the CLRA. The CLRA is to be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure this protection. *See* Civ. Code, § 1760; *see also Wang v. Massey Chevrolet*, 97 Cal.App.4th 856, 869, 118 Cal.Rptr.2d 770 (2002). Plaintiff alleges specifically that the words "All-Natural" are false and misleading because they create the impression that the Products only contain natural ingredients when they do not. These representations violate the CLRA as false designations of characteristics and qualities and are likely to deceive a reasonable consumer into believing the Products are "All-Natural."

47.     On January 30, 2018, Plaintiff mailed Defendant letters to three different locations where it has offices, setting forth its violations of, *inter alia*, the CLRA. Those letters were delivered on February 5, 2018, and February 7, 2018. Defendant has failed to respond to the letters.

48.     Following receipt of the CLRA letters and Plaintiff's allegation, Defendant, in a tacit admission of its violations, made substantial changes to its website.

49.     The website that Defendant used until very recently, www.nelliesallnatural.com, now redirects consumers to www.nelliesclean.com.  The archival website, www.archive.org, indicates that its first capture of www.nelliesclean.com occurred on March 13, 2018, and the last capture of www.nelliesallnatural.com was on March 18, 2018.  Notably, Defendants' new website does not contain any reference to "Nellie's All-Natural," although the packaging of the pictured Products continues to display the "Nellie's All-Natural" brand and language.

## **CLASS ACTION ALLEGATIONS**

50.     Plaintiff brings this action as a class action, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, seeking injunctive and other relief on behalf of himself and all other similarly situated members of the Classes.

51.     Plaintiff seeks to represent a class defined as follows:

>       All persons in the United States who purchased any of the Products (defined in ¶ 7) (the "National Class").

52.     In addition, Plaintiff asserts claims under California law on behalf of

CLASS ACTION COMPLAINT

the following subclass of California residents.

> All persons in California who purchased any of the Products (defined in ¶ 7) (the "California Sub-Class")(collectively with the National Class, the "Class" or "Classes").

53.     Excluded from each Class are (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Products; and (c) the Judge to whom this case is assigned.

54.     **Numerosity/Impracticability of Joinder**.  The members of each Class are so numerous that joinder of all members would be impracticable.  Each proposed Class includes, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control or otherwise obtained through reasonable means.

55.     **Commonality and Predominance**.  There are common questions of law and fact which predominate over any questions affecting only individual members of each Class.  These common legal and factual questions, include, but are not limited to, the following:

> a.  whether Defendant engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion and/or sale of the Products;
>
> b.  whether Defendant's acts and omissions violated California consumer protection law and breached express warranties;

c. whether Defendant made material misrepresentations of fact or omitted material facts to Plaintiff and the Class regarding the marketing, promotion, advertising and sale of the Products;

d. whether Defendant's false and misleading statements of fact regarding the Products were intended to, and likely did, deceive the public;

e. whether, as a result of Defendant's misconduct, Plaintiff and the Class are entitled to equitable relief and other relief, and, if so, the nature of such relief;

f. whether Plaintiff and the members of the Class have sustained ascertainable loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof; and

g. whether Plaintiff and the members of the Class are entitled to injunctive relief.

56. **Typicality**.  Plaintiff's claims are typical of the claims of the members of each Class he seeks to represent.  Plaintiff and all Class members have been injured by the same wrongful practices in which Defendant has engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members, and are based on the same legal theories.

57. **Adequacy**.  Plaintiff is a representative who will fully and adequately assert and protect the interests of each Class, and has retained Class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor his attorneys have any interests that are contrary to or conflicting with either Class.

58. **Superiority**.  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members would be economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by members of each Class

CLASS ACTION COMPLAINT

are in the millions of dollars, the individual damages incurred by each Class

member resulting from Defendant's wrongful conduct are too small to warrant the

expense of individual suits.  The likelihood of individual Class members

prosecuting their own separate claims is remote, and, even if every Class member

could afford individual litigation, the court system would be unduly burdened by

individual litigation of such cases.  Individual Class members do not have a

significant interest in individually controlling the prosecution of separate actions,

and individualized litigation would also present the potential for varying,

inconsistent, or contradictory judgments and would magnify the delay and expense

to all of the parties and to the court system because of multiple trials of the same

factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a class action.  In

addition, Defendant has acted or refused to act on grounds generally applicable to

each Class and, as such, final injunctive relief or corresponding declaratory relief

with regard to the members of each Class as a whole is appropriate.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty
### (On Behalf of the National Class)

59.    Plaintiff realleges and incorporates by reference the allegations

contained in the paragraphs above as if fully set forth herein.

CLASS ACTION COMPLAINT

60.     When Plaintiff and the members of the Classes purchased the

Products, Defendant expressly warranted that the Products were All Natural and did

not contain synthetic ingredients.

61.     For the reasons discussed heretofore, Defendant failed to provide

Plaintiff and the Classes with Products that meet Defendant's representations, as the

Products contain non-natural, synthetic ingredients, some of which are hazardous.

As a result, Defendant breached the terms of its express warranty and Plaintiff and

the members of the Classes have been damaged.

62.     Plaintiff has satisfied all conditions precedent to holding Defendant

liable for breach of express warranty.

63.     Further, any effort by Defendant to disclaim or otherwise limit liability

should be estopped because Defendant wrongfully, uniformly, and repeatedly

misrepresented the purported "all natural" quality of the Products, such that

consumers were, and are, misled.

**SECOND CAUSE OF ACTION**
**Violation of the California Consumer Legal Remedies Act**
**Cal. Civil Code § 1750, *et seq.***
**(On Behalf of the California Class)**

64.     Plaintiff realleges and incorporates by reference the allegations

contained in the paragraphs above as if fully set forth herein.

65.     Defendant is a "person" within the meaning of the CLRA.

66.     Plaintiff is a "consumer" and the Products constitute "goods" for the

purposes of the CLRA.

CLASS ACTION COMPLAINT

67.    Defendant engaged in conduct that violates the CLRA in the following ways:

    a.  Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Products have "all natural" characteristics which they do not have;

    b.  Defendant violated Cal. Civ. Code § 1770(a)(7) by representing that the Products are "all natural" when they contain synthetic ingredients;

    c.  Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Products as all natural, although it intended to sell them containing non-natural, synthetic ingredients; and

    d.   Defendant violated Cal. Civ. Code § 1770(a)(16) by representing that the Products were supplied as all natural, when they were not.

68.    Defendant knew that the Products were not "all natural," and actively misrepresented the Products as "all natural," even though it knew the Products contain synthetic ingredients.

69.    Such conduct was likely to deceive, and did deceive, reasonable consumers, including Plaintiff, and the information misrepresented would be material to a reasonable consumer in deciding to purchase the Products and in considering how much to pay for the Products.

70.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff, individually and as representative of the California Class, seeks injunctive and equitable relief for violations of the CLRA, as well as all other relief to which the Court may deem Plaintiff is entitled.

CLASS ACTION COMPLAINT

71.     Plaintiff has satisfied the notice prerequisites of Cal. Civ. Code § 1782,

as he notified Defendant in writing on or about February 7, 2018, about the conduct

alleged herein.

### THIRD CAUSE OF ACTION
### Violation of the California False Advertising Law
### Cal. Bus. & Prof. Code § 17500, *et seq.*
### (On Behalf of the California Class)

72.     Plaintiff realleges and incorporates by referenced the allegations

contained in the paragraphs above as if fully set forth herein.

73.     Section 17500 of the FAL proscribes disseminating any statement in

California "which is untrue or misleading, and which is known, or which by the

exercise of care should be known, to be untrue or misleading," with the intent to

dispose of any property.

74.     Defendant has violated § 17500 because it disseminated false

advertisements regarding the Products' purported natural quality to members of the

public, with the intent to sell the Products.

75.     Defendant knew that the Products contain non-natural, synthetic

ingredients, and thus, knew that its statements were misleading and untrue.

76.     Plaintiff and the members of the California Class relied upon

Defendant's misrepresentations in deciding to purchase the Products and have been

damaged as a direct and proximate result.  Had Plaintiff and the Class members

known that the Products contained non-natural, synthetic ingredients, they would

not have purchased the Products, or would have paid less for them.

77.     Defendant engaged, and continues to engage, in a pattern of wrongful

conduct in the course of selling the Products, including in the State of California.

Plaintiff, therefore, seeks to enjoin Defendant from continuing to engage in this

pattern of wrongful, deceptive conduct, and seeks such other relief as set forth

below.

**FOURTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of the California Class)**

78.     Plaintiff realleges and incorporates by reference the allegations

contained in the paragraphs above as if fully set forth herein.

79.     Section 17200 of the UCL prohibits any "unlawful, unfair or

fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading

advertisement."

80.     Defendant has violated the unlawful prong of § 17200 by its violations

of the CLRA, as set forth above.

81.     In addition, Defendant has violated the unfair prong of § 17200

through the acts described of herein, including, *inter alia*, misrepresenting that the

Products are "all natural" and failing to disclose to consumers that the Products

contain non-natural, synthetic ingredients.  As a result, Plaintiff and the members of

the California Class relied on Defendant's misrepresentations in deciding whether

CLASS ACTION COMPLAINT

to purchase the Products. The misrepresentations were material information that would have influenced Plaintiff and the Class members' decisions.

82. Defendant has also violated the fraudulent prong of § 17200 insofar as the misrepresentations related to the Products' purported natural quality were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

83. As a direct and proximate result of Defendant's deceptive conduct, Plaintiff and the members of the California Class have been damaged.

84. Defendant continues to engage in this pattern of deceptive conduct and, thus, Plaintiff and the members of the California Class seek to enjoin Defendant from continuing its unfair, unlawful, and deceptive practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the proposed Classes, prays for judgment as follows:

a. Certification of each Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and his counsel as Class counsel;

b. Compensatory and other damages for economic and non-economic damages, including punitive and/or treble damages where permitted;

c. An Order enjoining Defendant from continuing to engage in its pattern of unlawful, fraudulent, deceptive, and unfair conduct, as alleged in this Complaint;

d. Statutory pre-judgment and post-judgment interest on any amounts;

e. Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

f. Such other and further relief as the Court deems just and appropriate.

CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Date:  April 5, 2018              /s/ Kolin C. Tang
                                  Kolin C. Tang (SBN 279834)
                                  **SHEPHERD, FINKELMAN, MILLER**
                                  **& SHAH, LLP**
                                  11755 Wilshire Blvd.
                                  15th Floor
                                  Los Angeles, CA 90025
                                  Telephone: (323) 510-4060
                                  Facsimile: (866) 300-7367
                                  Email: ktang@sfmslaw.com


                                  James C. Shah (SBN 260435)
                                  **SHEPHERD, FINKELMAN, MILLER**
                                  **& SHAH, LLP**
                                  35 East State Street
                                  Media, PA 19063
                                  Telephone: (610) 891-9880
                                  Facsimile: (866) 300-7367
                                  Email: jshah@sfmslaw.com


                                  Nathan Zipperian *(to be admitted pro hac vice)*
                                  **SHEPHERD, FINKELMAN, MILLER**
                                  **& SHAH, LLP**
                                  1625 N. Commerce Parkway, Suite 320
                                  Fort Lauderdale, FL 33326
                                  Telephone: (954) 515-0123
                                  Facsimile: (866) 300-7367
                                  Email: nzipperian@sfmslaw.com